1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation, | Civil Case No. 3:23-cv-391-MMA-KSC |
| | **CONSENT DECREE** |
| Plaintiffs, | |
| vs. | |
| | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |
| BAPKO METAL, INC., a California corporation, | |
| Defendant. | |

Consent Decree                                              Civil Case No. 3:21-cv-01350-CAB-MDD

# CONSENT DECREE

The following Consent Decree (or "Agreement") is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF") (collectively, "Plaintiffs") and BAPKO Metal, Inc., a California corporation ("BAPKO" or "Defendant"). The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties.";

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS**, CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, BAPKO is owner of a metal fabrication and shaping company that operates the facility located at 12610 Vigilante Road, Lakeside, California 92040 ("Facility");

**WHEREAS**, Plaintiffs members live and/or recreate in and around waters which receive discharges from the Facility, including specifically San Vicente Creek, the San Diego River, and eventually the Pacific Ocean;

**WHEREAS**, the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, and as amended by Order No. 2014-0057-DWQ, as amended in 2015

and 2018 ("Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

WHEREAS, on December 22, 2022, Plaintiffs sent BAPKO, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("First Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility;

WHEREAS, on February 28, 2023, Plaintiffs filed a complaint against BAPKO in the United States District Court, Southern District of California (Case No. 3:23-cv-391-MMA-KSC), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint");

WHEREAS, Plaintiffs allege BAPKO to be in violation of the substantive and procedural requirements of the Permit, and the Clean Water Act with respect to the Facility;

WHEREAS, BAPKO denies all allegations in the Notice Letter and Complaint relating to the Facility;

WHEREAS, the Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

WHEREAS, all actions taken by BAPKO pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.    Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District;

3.    The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.    Plaintiffs have standing to bring this action;

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve the allegations by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, BAPKO agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act. Specifically, BAPKO agrees to comply with Receiving Water Limitation VI.A. of the Permit requiring BAPKO "ensure that industrial storm water discharges and authorized Non-Storm Water Discharges ("NSWDs") do not cause or contribute to the exceedance of any applicable water quality standards in any affected receiving water," and Effluent Limitation V.A. of the Permit which requires that BAPKO "shall implement Best Management Practices ("BMPs") that comply with the BAT/BCT requirements of the Permit to reduce or prevent discharges of pollutants in Defendant's storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability." BAPKO shall develop and implement BMPs necessary to achieve compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the Permit.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

7.    Plaintiffs shall submit this Consent Decree to the United States Department

of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to BAPKO if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

8.    Within ten (10) calendar days of the Federal Agencies notifying the Settling Parties of no objection to the Consent Decree or expiration of the Federal Agencies' review period specified in paragraph 7 above, whichever is earlier, Plaintiffs will lodge this Consent Decree with the District Court. If the Consent Decree is not entered by the District Court, the Settling Parties shall retain all rights they had in this litigation before the lodging of the Consent Decree.

9.    The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

10.    This Consent Decree shall terminate two (2) years after the Effective Date unless Early Termination is triggered pursuant to paragraph 10 of this Agreement (the earlier of which shall be the "Termination Date" as used in this Consent Decree).

11.    This Consent Decree will terminate early ("Early Termination") in the following circumstances:

11.1    If BAPKO ceases its operations at the Facility, is no longer subject to the Permit, and files a Notice of Termination (NOT) via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the Permit section II.C.1, and the NOT is accepted by the State or Regional Board; or

11.2    If BAPKO files a Non-Exposure Certification (NEC) via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the Permit section II.B.1, and the NEC is accepted by the State or Regional Board; or

11.3    Otherwise by mutual agreement of the Parties, after notice to the Department of Justice.

12.    Plaintiffs may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to Annual Site Inspections described below.

## III.    COMMITMENTS OF THE PARTIES

### A.    Storm Water Pollution Control Best Management Practices.

13.    BAPKO shall develop and ensure the ongoing maintenance and implementation of (as applicable) appropriate Best Management Practices ("BMPs") necessary to comply with the Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and to comply with the Permit's Receiving Water Limitations.

14.    BAPKO shall prepare a Storm Water Pollution Prevention Plan ("SWPPP") including a Site Plan identifying the location of implemented BMPs at the Facility. A Copy of the Site Plan is attached hereto as **Exhibit A**. Additional BMPs that will be implemented as part of compliance with this Agreement as well as a tentative schedule for completion are attached hereto as **Exhibit B**.

### B.    Discharge Locations and Storm Water Sampling.

15.    Discharge Locations. The current storm water sample locations ("Discharge Locations") for the Facility are identified in Exhibit A. Should the Discharge Locations change from what is presently depicted in Exhibit A, BAPKO will provide Plaintiffs with an updated exhibit, SWPPP, and Site Map.

16.    Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

16.1    Frequency. During the life of this Agreement, BAPKO shall collect samples from all Discharge Locations at the Facility from a minimum of four (4) "qualified storm events" ("QSEs"), as defined by the Permit, that occur in a "Reporting Year," as

defined by the Permit, such that BAPKO collects two (2) samples during the first half of the Reporting Year and two (2) samples during the second half of the Reporting Year, if any QSE's occur during said periods. If, prior to March 1, BAPKO has collected samples from two (2) or fewer QSEs during that Reporting Year, BAPKO shall collect samples during as many QSEs as necessary until a minimum of four (4) storm events have been sampled for the Reporting Year, if feasible. No two (2) samples may be from the same QSE.

16.2    <u>Contained or Stored Storm Water</u>. BAPKO shall sample stored or contained storm water discharges from Discharge Locations at the Facility, if any, pursuant to Section XI.B.4 of the Permit.

16.3    <u>Parameters</u>. BAPKO shall analyze each storm water sample collected from a Discharge Location, pursuant to paragraph 16.1 or 16.2, for the parameters set forth in the below Table 1 Numeric Levels.

16.4    <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Agreement.

16.5    <u>Detection Levels</u>. BAPKO shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Levels.

16.6    <u>Hold Time</u>. All samples collected from the Facility shall be delivered to the laboratory as necessary, using reasonable best efforts, to ensure that sample "hold time" is not exceeded for each contaminant sampled.

16.7    <u>Results</u>. BAPKO shall request that sample analysis results be reported to them as soon as possible without incurring "rush" charges.

16.8    <u>Reporting</u>. BAPKO shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 16.1 and 16.2 collected at the Facility, within ten (10) business days of receiving the results.

**C.    Reduction of Pollutants in Discharges.**

17.    <u>Contaminant Reduction</u>. Unless otherwise provided by this Agreement, BAPKO shall develop and implement BMPs to reduce pollutants in storm water discharges from the Facility to levels at or below those in Table 1 ("Numeric Levels").[1]

**Table 1**

| Pollutant | Numeric Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc* | 0.12 mg/L |
| Total Recoverable Copper* | .013 mg/L |
| Total Recoverable Nickel* | .470 |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | .75 mg/L |
| Total Recoverable Iron | 0.3 mg/L |
| N + N | 0.68 mg/L |
| pH | 6.5-8.5 s.u. |

*In the case of zinc, copper, and nickel, the values may be adjusted based on hardness pursuant to the California Toxics Rule and Permit. The more conservative value of the NALs and the hardness-adjusted California Toxics Rule values shall apply for these constituents.

18.    <u>Action Plan for Table 1 Exceedances</u>. If Defendant's monitoring reveals an exceedance of the Numeric Limits specified in Table 1 at any Discharge Location between July 1 and June 30 of any reporting year and there is not already an Action Plan[2] currently being prepared or in the process of being implemented by BAPKO to address or that will address that pollutant ("Action Plan Triggering Event"), BAPKO shall prepare an Action Plan for the Facility intended to reduce the Numeric Level of that pollutant.[3] When

---

[1] The Numeric Levels for metals marked with an asterisk are hardness dependent.

[2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Permit. However, nothing in this Agreement prevents BAPKO from creating a single plan to comply with the Permit and this Agreement, or from including the same BMPs and other measures in an Action Plan under the Permit and this Agreement.

[3] To the extent there is a dispute between the Parties regarding whether another Action Plan is required for an exceedance of a pollutant when there is already an Action Plan being

required, a proposed Action Plan must be submitted to Plaintiffs within 45 (forty-five) days after BAPKO receives the laboratory results reflecting an Action Plan Triggering Event, unless Defendant requests and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld.

18.1 <u>Action Plan Requirements</u>. The Action Plan shall include at a minimum: (1) the identification of the pollutant(s) causing the Action Plan Triggering Event; (2) an assessment of the potential source of each pollutant discharged that caused the Action Plan Triggering Event; (3) the identification of additional BMPs, if any, that will be designed and implemented for the location(s) of the exceedance discharge in an effort to prevent future exceedances of parameters that triggered the Action Plan (including the possibility of a treatment control BMP, which would be designed to meet the Permit's Design Storm Standard pursuant to Section X.h.6); and (4) time schedules for implementation of proposed BMPs (if any). Submitting an Action Plan that does not address all of the requirements in this paragraph will be considered a missed deadline after dispute resolution, if any. However, if the dispute resolution process under this Agreement results in any changes to an Action Plan, BAPKO shall have a reasonable time to prepare and submit any updates to said plan subject to the Action Plan Review procedures set forth in Section 18.2.

18.2 <u>Action Plan Review</u>. Plaintiffs shall have thirty (30) days upon receipt of Defendant's proposed Action Plan to approve or provide comments to BAPKO on the proposed Action Plan. If Plaintiffs provide BAPKO comments on the proposed Action Plan, BAPKO shall have thirty (30) days from receipt of Plaintiffs' comments, unless BAPKO requests and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld, to either incorporate Plaintiffs' material comments into the Action Plan and seek Plaintiffs' approval of the modified Action Plan or another round of

---

prepared or in the process of being implemented by BAPKO, that dispute shall be resolved pursuant to the Dispute Resolution Procedures under Section VI of this Agreement.

comments if mutually agreed, or, if BAPKO declines to accept one or more of Plaintiffs' material comments, provide Plaintiffs with a written explanation of the grounds for such rejection. Any disputes over the Action Plan, including any requested extensions, shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement, set out in Section VI below. BAPKO shall not be required to begin implementation of any Action Plan until Plaintiffs have approved the Action Plan, until the dispute over the Action Plan has been resolved through the Dispute Resolution Procedures, or until mutual agreement of the Parties, whichever is later ("Implementation Triggering Event").

      18.3  Disputes regarding the adequacy of a particular aspect of the Action Plan shall not impact the schedule for implementing any other unrelated aspect of the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution provisions of this Agreement, set out in Section VI below, which shall not be subject to stipulated penalties.

      19.    BAPKO shall contact Plaintiffs to request an extension of any deadline set forth in this Agreement, if necessary, at least three (3) days prior to the deadline at issue. Failure to request an extension, if necessary, in this timeframe will be considered a missed deadline.  Plaintiffs' consent to Defendant's requested extension shall not be unreasonably withheld.

      20.    BAPKO shall revise its Storm Water Pollution Prevention Plans ("SWPPPs") and/or Monitoring & Implementation Plan ("MIP"), if applicable, within thirty (30) days of resolution of any disputes under the Action Plan, whichever comes first. BAPKO shall notify Plaintiffs in writing when the final Action Plan has been completely implemented, and the SWPPP and/or MIP have been revised.

**D.**   **<u>Visual Observations.</u>**

      21.    Until the Termination Date of the Agreement, BAPKO shall conduct, and document visual observations required by the Permit and as more fully described in the Facility SWPPP. BAPKO shall make these records available for Plaintiffs' review via email within seven (7) calendar days of the request.

**E.    Employee Training.**

22.    Within thirty (30) days of the Effective Date, BAPKO shall conduct employee training in order to familiarize employees at the Facility with the requirements of the Storm Water Permit and this Consent Decree ("Training Program"). The Training Program shall include use of written training materials needed for effective implementation. BAPKO shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

23.    The training program shall require at least the following:

23.1    Non-Storm Water Discharge Training. BAPKO shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the Facility, and how to detect and prevent them;

23.2    BMP Training. BAPKO shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility;

23.3    Sampling Training. BAPKO shall designate an adequate number of employees or consultants to ensure the collection of storm water samples from each discharge location as required by this Agreement and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

23.4    Visual Observation Training. BAPKO shall provide training to all individuals performing visual observations at the Facility pursuant to this Agreement and/or the Storm Water Permit that includes when visual observations are required, the

different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

24.    <u>Ongoing Training.</u> Training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within thirty (30) business days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Agreement.

25.    <u>Training Records.</u>  BAPKO shall maintain training records to document compliance with Article III.E of this Agreement including, but not limited to, all written or visual training materials, the dates of each training, attendance for each training, and summaries of topics covered. BAPKO shall make these records available for Plaintiffs' review upon request. The Training Program shall be specified in the SWPPP and BAPKO shall modify the SWPPP as necessary to reflect the training program required by this Agreement.

**F.    <u>Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.</u>**

26.    To the extent not already completed, within thirty (30) days of the Effective Date of this Agreement, BAPKO shall revise the Facility's SWPPP and/or MIP as applicable to include: (i) BMPs that are currently utilized at the Facility; (ii) BMPs identified, developed, and implemented pursuant to this Agreement and/or the Permit; (iii) the specific individual(s) or position(s) responsible for compliance with the Permit; (iv) a detailed site map that includes at a minimum all information required by the Permit; (v) a description of each industrial activity, potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source; and (v) all other applicable requirements of the Permit and this Agreement.

27.    Plaintiffs shall provide reasonable and material comments, if any, to BAPKO

within thirty (30) days of receipt of any revised SWPPP and MIP.  Within forty-five (45) days of receiving comments from Plaintiffs, BAPKO shall incorporate Plaintiffs' reasonable and material comments into any revised SWPPP and/or MIP or shall justify in writing to Plaintiffs why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or MIP shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement set forth in Section VI below.

28.    <u>Additional and Ongoing Revisions to SWPPP and/or MIP</u>. BAPKO shall revise the SWPPP and/or MIP if there are any changes in the Facility's operations that may affect the quality of storm water discharges at the Facility, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan. Plaintiffs may review and comment on the revised SWPPP and/or MIP if a significant revision has been made, e.g., change or reduction of Discharge Locations, implementation of advanced BMPs, removal of a constituent to be sampled, etc.

## IV.    **COMPLIANCE MONITORING AND REPORTING**

29.    Each Reporting Year for the life of this Agreement, Plaintiffs and their representatives may conduct one (1) noticed site inspection per Reporting Year. The site inspections shall occur during normal business hours, and Plaintiffs shall provide BAPKO with at least five (5) business days' notice of an intended inspection. If an inspection is noticed, Plaintiffs will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Plaintiffs conduct their inspection during a QSE. Plaintiffs will make efforts to conduct their inspection during a QSE, but a lack of a QSE will not prevent Plaintiffs from conducting the inspection. During inspections, Plaintiffs' representatives will wear safety goggles, hard hats, vests, and any other appropriate safety clothing and footwear recommended by BAPKO and remain in the presence of BAPKO's representatives at all times. Plaintiffs' inspection team shall consist of no more than four (4) persons.

30.     Plaintiffs shall be allowed to take photographs and/or record video(s) of the Facility during the inspection, however, Plaintiffs may not take video or pictures of any materials or equipment at the Facility identified by BAPKO as consisting of, indicating, or including confidential proprietary business materials or processes, or any trade secrets, as that term is defined under the Uniform Trade Secret Act, 18 U.S.C. § 1839. If any such photos videos are inadvertently taken, Plaintiffs' will delete such materials as soon as reasonably practicable and not publish, publicize, or in any way release to members of the public any such materials.

31.     During the site inspection, Plaintiffs and/or their representatives shall be allowed access to the Facility's SWPPP, MIP, and other non-privileged monitoring records, reports, and all sampling data produced in accordance with paragraph 15 and its subparts. In addition, during the site inspection, Plaintiffs and/or their representatives may collect grab samples of discharges from QSEs, even if outside of the first four hours of discharge, from the Facility, though any such samples should be appropriately identified, and the time of the sampling shall be disclosed to BAPKO. Any samples collected by Plaintiffs shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments. BAPKO shall have an opportunity to take concurrent measurements using their own equipment. Copies of the complete laboratory reports shall be provided to BAPKO within five (5) business days of receipt. Plaintiffs shall bear all costs of inspection, sampling, and analysis.

32.     <u>Reporting and Documents</u>. Until the Termination Date of this Agreement, BAPKO shall copy Plaintiffs on all final documents related to storm water discharges or water quality at the Facility that are submitted to the Regional Board and/or State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities, unless such materials contain confidential proprietary business or trade secret material, in which case such information may be removed or redacted prior to non-concurrent submittal

to Plaintiffs, which shall be provided to Plaintiffs within five (5) business days of submittal to the aforementioned agencies. Any correspondence related to Defendant's compliance with the Permit or storm water quality received by BAPKO from any regulatory agency, State or local agency, county or municipality shall be provided to Plaintiffs within ten (10) business days of receipt by BAPKO.

33.    <u>Compliance Monitoring and Oversight</u>. BAPKO shall pay a total of Five Thousand dollars ($5,000) to compensate Plaintiffs for costs and fees to be incurred for monitoring the Facility's compliance with this Agreement, including, but not limited to, anticipated costs and fees related to Annual Site Inspections, Payment shall be made via U.S. Mail or commonly accepted carrier to Coast Law Group LLP, 1140 South Coast Highway 101 Encinitas, California 92024. Payment shall be made within thirty (30) days of the Effective Date.

34.    <u>Action Plan Payment</u>. BAPKO shall pay a total of Five Thousand dollars ($5,000) per Action Plan, deemed to be full payment for all of Plaintiffs' costs to review and comment on any Action Plan submitted. Only one (1) Five Thousand dollars ($5,000) Action Plan Payment per reporting year (July 1 and June 30) per pollutant category (i.e. metals, bacteria, nutrients) shall be required. Payment shall be made within thirty (30) days of the submittal of an Action Plan and payable to Coast Law Group, LLP via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

## V.    <u>Environmental Project, Reimbursement of Fees and Costs, and Stipulated Payments</u>

35.    <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Permit alleged in the Complaint, BAPKO agrees to make a total payment of Eight Thousand dollars ($8,000) to San Diego River Park Foundation to fund environmental project activities that will enhance water quality in the Lagoon and its tributaries. Projects will include cleanups in or along the San Diego River downstream of the confluence of San Vicente Creek. Payment shall be made payable to:

San Diego River Park Foundation, 4891 Pacific Highway, Suite 114, San Diego, CA 92110, Attn: Rob Hutsel, CEO. Payment shall be made within thirty (30) days of the Effective Date.

36.    <u>Reimbursement of Plaintiffs' Fees and Costs</u>. BAPKO shall pay a total of Forty-Nine Thousand dollars ($49,000) to Coast Law Group, LLP, and San Diego Coastkeeper to reimburse investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Agreement. Payment shall be made within thirty (30) days of the Effective Date and payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

37.    <u>Stipulated Payments</u>. Within 30 days' of notification by Plaintiffs, BAPKO shall make a remediation payment of One Thousand Five Hundred dollars ($1,500) for each missed deadline included in this Agreement, not excused by Force Majeure or agreement by Plaintiffs. Stipulated Payments to San Diego River Park Foundation shall be used to fund environmental project activities that will benefit the Southern California Bight and its tributaries. Projects will include cleanups in or along the San Diego River downstream of the confluence of San Vicente Creek. Payment shall be made payable to: San Diego River Park Foundation, 4891 Pacific Highway, Suite 114, San Diego, CA 92110, Attn: Rob Hutsel, CEO. In addition to the remediation payment, BAPKO shall cure any missed deadline (i.e., submit the outstanding deliverable) within 30 days of notification, or, in the alternative, invoke the Dispute Resolution Procedures set forth in Section VI below. BAPKO shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VI.    **DISPUTE RESOLUTION**

38.    This Court shall retain jurisdiction over this matter until the Termination Date for the purposes of implementing and enforcing the terms and conditions of this Agreement and adjudicating all disputes among the Parties that may arise under the provisions of this

Agreement.  The Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt.

39.    Meet and Confer. A Party to this Agreement shall invoke the dispute resolution procedures ("Dispute Resolution Procedures") of this Section by notifying all other Parties in writing of the matter(s) in dispute.  The Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of receipt of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

40.    Formal Dispute Resolution. If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the Party initiating the Dispute Resolution Procedures may invoke formal dispute resolution ("Formal Dispute Resolution") by filing a motion before the United States District Court for the Southern District of California. The Parties agree to request an expedited hearing schedule on the motion if requested by any Party.

41.    Burden of Proof. The burden of proof for Formal Dispute Resolution shall be in accordance with applicable law. In the event of any disagreement or dispute between Plaintiffs and BAPKO over the necessity or appropriateness of implementing any particular BMP or set of BMPs, BAPKO shall bear the burden of demonstrating that their BMPs, collectively, constitute BAT/BCT for the Facility, or that they are in compliance with the terms of this Agreement.

42.    Costs and Fees. The Parties shall be entitled to seek fees and costs incurred in filing or opposing any motion made to the Court for the purpose of Formal Dispute Resolution in Section VII, according to the costs and fees provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

43.    Force Majeure. No Settling Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes

impossible due to circumstances beyond the Settling Party's control, including Force Majeure. Impossibility and/or Force Majeure shall not include normal inclement weather, or economic hardship.  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

44.    If BAPKO seeks to rely upon paragraph 43 to excuse or postpone performance, it shall notify Plaintiffs in writing as soon as possible, but in no event more than ten (10) business days of the date that BAPKO learned of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").

45.    Within ten (10) days of sending the Notice of Nonperformance, BAPKO shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure. BAPKO shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by BAPKO to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. BAPKO shall adopt all reasonable measures to avoid and minimize such delays.

46.    If the Parties disagree on a Notice of Nonperformance, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, or on an extension of time to informally resolve their disagreement, either Party shall have the right to invoke the Dispute Resolution Procedures. If the disagreement cannot be resolved informally and Formal Dispute Resolution is invoked, BAPKO shall bear the burden during Formal Dispute Resolution of proving that any delay in performance of any

requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

47.    <u>Plaintiffs' Release</u>. Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, BAPKO (and each of its direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and/or Complaint up to the termination of this Agreement.

48.    <u>Defendant BAPKO's Release</u>. Upon the Effective Date of this Agreement, BAPKO, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waive all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to the termination of this Agreement by the Court.

49.    Nothing in this Agreement limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendant's compliance with the Permit or the Clean Water Act occurring or arising after the Effective Date of this Agreement.

## VIII.  **MISCELLANEOUS PROVISIONS**

50.    <u>No Admission of Liability</u>. Neither this Agreement, the implementation of additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. BAPKO maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

51.    <u>Construction</u>. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein.

52.    <u>Choice of Law</u>. The laws of the United States and of the State of California for state law questions shall govern this Agreement.

53.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54.    <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

**If to Plaintiff Coastkeeper:**

San Diego Coastkeeper
Attn: Phillip Musegaas
8305 Vickers Street, Suite 209
San Diego, CA 92111
Email: phillip@sdcoastkeeper.org

**With Copy to:**

San Diego Coastkeeper
Attn: Patrick McDonough
8305 Vickers Street, Suite 209
San Diego, CA 92111

Consent Decree

Civil Case No. 3:21-cv-01350-CAB-MDD

Email: patrick@sdcoastkeeper.org

**If to Plaintiff CERF:**

Coastal Environmental Rights Foundation
Attn: Sara Ochoa
1140 South Coast Highway 101
Encinitas, CA 92024
Email: Sara@cerf.org

**With Copy to:**

Coast Law Group LLP
Attn: Livia Beaudin
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: livia@coastlawgroup.com

**For BAPKO Metal, Inc.**

BAPKO Metal, Inc.
Attn: Tim Black
721 S. Parker St., Ste. 300
Orange, CA 92868
tblack@bapko.com

**With Copy to:**

W. Lee Smith
Michel & Associates, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
lsmith@michellawyers.com

55.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

56.     <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiffs do not, by their

consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect, limit, or increase in any way the obligation of BAPKO to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

57.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

58.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

59.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

60.     <u>Integration Clause</u>. This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

61.     <u>Authority of Counsel</u>. The undersigned representatives for Plaintiffs and BAPKO each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

62.     <u>Authority of Parties</u>. Each Party certifies that its undersigned representative(s) is fully authorized to enter into this Consent Decree, to execute it on behalf of that Party, and to legally bind that Party to the terms of this Consent Decree.

63.     The Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

1   **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree

2   as of the date first set forth below.

3   APPROVED AS TO CONTENT

4   Dated: _____8/15/2023_____   By: _Phillip Musegaas_
5                                Name: _Phillip Musegaas_
6                                Title: _Executive Director_
7                                San Diego Coastkeeper

8   Dated: _____8/14/2023_____   By: _Sara Ochoa_
9                                Name: _Sara Ochoa_
10                               Title: _Programs Director_
11                               Coastal Environmental Rights Foundation

12  Dated: _____8/9/2023_____    By: _____
13                               Name: _TIM BLACK_
14                               Title: _CFO_
15                               BAPKO Metal, Inc.

16

17  APPROVED AS TO FORM

18  Dated: _____8/14/2023_____   By: _____
19                               Livia Borak Beaudin
20                               Coast Law Group LLP
21                               Attorneys for CERF

22  Dated: _____8/14/2023_____   By: _Pat McD_
23                               Patrick McDonough
24                               Attorney for San Diego Coastkeeper

25
26  Dated: _____8/10/23_____     By: _____
27                               W. Lee Smith
28                               Michel & Associates, P.C.
                                 Attorneys for BAPKO Metal, Inc.

**IT IS SO ORDERED.**


Date: 10/11/2023

                                       Hon. Michael M. Anello
                                         United States District Judge
                                         Southern District of California

# BAPKO Metal Inc. Vicinity Diagram
## 12610 Vigilante Road, Lakeside, CA 92040





— - San Vicente Creek

— - San Diego River

 - Facility Location

N

# BAPKO Metal Inc. Facility Diagram
## 12610 Vigilante Road, Lakeside, CA 92040



- Vigilante Road -



| | | |
|---|---|---|
| 🟥 - Building | | 🟦 - Neighboring Business |
| ⬜ - Paved Area | | ▬ - Wall |
| 🟨 - Covered Area | | ☐ - Catch Basin |



# BAPKO Metal Inc. – Monitoring Diagram
## 12610 Vigilante Road, Lakeside, CA 92040





Exhibit A p. 4

# BAPKO Metal Inc. - Potential Pollutant Diagram
## 12610 Vigilante Road, Lakeside, CA 92040





| | |
|---|---|
| #1- Indoor Production | #5- Outdoor fabrication |
| #2- Covered Crane Bay | #6- Painting area |
| #3-  General Storage | #7- Outdoor Storage |
| #4-  Paint Storage | #8 - Operational Equipment* |

*Although not shown & used predominantly indoors, Operational Equipment is used throughout the facility.



**EXHIBIT B**

BAPKO Metal, Inc.
BMP Improvements

**Within 30 days of the Effective Date, BAPKO Metals shall implement the following BMPs:**

**Storm Water Pollutant Reduction**
- Downspout Filters that contain metal removing media will be installed to reduce any potential contribution from roof runoff. The filtered water will combine with other storm water and discharge as normal

**Housekeeping Improvements**
- Obtain an industrial shop vacuum (PowerBoss Sweepmaster B1500 RH) to help capture metal fines from grinding, cutting, and other industrial activities, limiting buildup of metal fines and reducing pollutant levels. Create and implement a plan for daily shop vacuum use.
- Reimplement use of the industrial sweeper to keep the yard clean and further prevent accumulation of metal fines and dirt. Create and implement a plan for daily sweeper use.
- Conduct storm water management training and improve implementation and consistency with basic housekeeping requirements. This includes the painting area, where plastic sheeting needs to be properly used to contain overspray and prevent paint discharge.
- Sweep the Facility regularly twice a day.
- Dust collector attachments will be added to the grinders, or grinders will be replaced with grinders that have a built-in dust collector.
- Cover all outdoor material with tarps when not in use.
- Evaluate the Facility's current inventory and remove old and unused equipment and material.

**Additional BMPs**
- Develop a Rain Event Action Plan (REAP) to be implemented when there is a 30% chance (or greater) of rain with a checklist of tasks to complete prior to expected rain, in addition to regularly occurring housekeeping. The REAP will include sweeping and covering material to minimize exposure. BMP Kits will be deployed as well as inlet filters around the drains at the Discharge Points. BMP kits include metal media socks, industrial wattles, and flocculant. Also, Downspout Filters will be inspected and cleaned.